IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN SHORING, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MINISCALCO CONSTRUCTION, LLC, | : | |
| ET AL. | : | NO. 15-2612 |

## MEMORANDUM

**Padova, J.**                                                                                          August 31, 2015

      This is a breach of contract action arising from Defendants' failure to pay Plaintiff, American Shoring, Inc., for all of the amounts owed for Miniscalco Construction LLC's ("Miniscalco") rental of equipment from American Shoring. Before the Court is Defendants' "Motion to Open Default Pursuant to Federal Rule of Civil Procedure 55(c)." For the following reasons, the Motion is granted.

### I.    FACTUAL BACKGROUND

      The Complaint alleges that Miniscalco is a general contractor that performs commercial construction services. (Compl. ¶ 8.) On May 19, 2014, Miniscalco entered into a contract to perform work in connection with the relocation of the Shackamaxon Street combined sewer outflow at the north end of the SugarHouse Casino in Philadelphia, Pennsylvania (the "Project"). (Id. ¶¶ 9-11.) Since June 30, 2014, Miniscalco has entered into a series of rental agreements with American Shoring for the rental of shoring equipment for use on the Project. (Id. ¶ 16.) On July 1, 2014, American Shoring also extended credit to Miniscalco for the rental of shoring equipment for use on the Project pursuant to a letter of credit that requires payment for rentals "30 days from the date of invoice." (Id. ¶¶ 13-14.) American Shoring began delivering shoring equipment to Miniscalco in July 2014. (Id. ¶ 21.) American Shoring sent Miniscalco invoices

for that equipment pursuant to the rental agreements beginning on July 3, 2014 and continues to send monthly invoices to Miniscalco for the costs of renting the shoring equipment pursuant to the rental agreements. (Id. ¶¶ 22-23.) Miniscalco has failed to pay American Shoring for all of the rental costs it owes to American Shoring pursuant to the rental agreements. (Id. ¶ 24.) As of May 8, 2015, Miniscalco owed American shoring $628,156.08, of which $586,430.28 was past due. (Id. ¶ 25.) Miniscalco is more than 90 days past due on some of its invoices from American Shoring. (Id. ¶ 26.) Miniscalco continues to retain possession of shoring equipment from American Shoring, continues to use that equipment on the Project, and continues to accrue rental charges for that equipment. (Id. 27.) American Shoring has made repeated demands on Miniscalco for payment of the unpaid balance that Miniscalco owes to American Shoring. (Id. ¶ 28.)

On May 28, 2014, Miniscalco furnished a labor and material payment bond, no. 019-046-365 (the "Bond"), to guarantee payment for the work of its subcontractors, materialmen, and laborers on the Project. (Id. ¶ 29.) The Bond was issued by Miniscalco and Liberty Mutual Insurance Company ("Liberty Mutual"). (Id.) Under the terms of the Bond, Miniscalco is the principal and Liberty Mutual is the surety. (Id. ¶ 30.) American Shoring is a "claimant" as that term is defined by the Bond. (Id. ¶¶ 31-32.) The Bond provides that the "Principal and Surety hereby jointly and severally agree . . . that every claimant . . . who has not been paid in full before the expiration of a period of ninety (90) days after the date on which Claimant . . . furnished the materials for which said claim is made, may sue on this bond." (Id. ¶ 33.) On April 28, 2015, counsel for American Shoring provided Miniscalco and Liberty Mutual with written notice, pursuant to the Bond, that Miniscalco had failed to pay American Shoring the

agreed upon costs of renting the shoring equipment.  (Id. ¶ 34.)  Liberty Mutual has neither tendered payment under the Bond nor responded to American Shoring's notice.  (Id. ¶ 35.)

The Complaint asserts a claim for breach of contract against Miniscalco and Liberty Mutual for failing to pay American Shoring the unpaid invoiced amounts of $586,430.28 pursuant to the Bond (Count I).  The Complaint also asserts a claim against Miniscalco for breach of contract for failing to pay American Shoring in accordance with the terms of the rental agreements (Count II).  The Complaint seeks judgment against both Defendants in the amount of $586,430.28, plus interest, costs, and attorneys' fees.

## II.   PROCEDURAL HISTORY

The Complaint was filed on May 11, 2015.  On May 18, 2015, Liberty Mutual was served with the Summons and Complaint by personal service on Bernardo Montoyez of Corporation Service Company in Boston, Massachusetts.  (Docket No. 4.)  On May 21, 2015, American Shoring was served with the Summons and Complaint by personal service on Ashley Foote at Miniscalco's Skippack, Pennsylvania office.  (Docket No. 3.)   On June 19, 2015, after the Defendants failed to timely answer or otherwise respond to the Complaint, American Shoring filed a Request for Entry of Default Pursuant to Federal Rule of Civil Procedure 55(a), asking the Clerk to enter a default on the docket against both Defendants.  (Docket No. 5.)  The Clerk entered the Default on June 22, 2015.  On June 24, 2015, counsel entered their appearance on behalf of both Defendants in this case.  (Docket Nos. 6-8.)  Defendants filed the instant Motion to Open Default on July 1, 2015.  (Docket No. 9.)

## III.   LEGAL STANDARD

Defendants have moved to set aside the default judgments entered against them pursuant to Federal Rule of Civil Procedure 55(c), which provides that "[t]he court may set aside an entry

of default for good cause." Fed. R. Civ. P. 55(c).  We consider the following factors in ruling on a motion to set aside a default under Rule 55(c): "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984) (citations omitted).  The most important factor is "whether [the defendant] has established a meritorious defense." Id.  The Third Circuit has explained that the existence of a meritorious defense is "the critical issue because without a meritorious defense [the defendant] could not win at trial.  Therefore, there would be no point in setting aside the default . . . if [the defendant] could not demonstrate the possibility of his winning." Id.  Defaults are generally disfavored.  Id. at 194-95 (stating that "this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits" (quotation and citations omitted)).

**IV.   DISCUSSION**

Defendants ask that we open the defaults entered against them on the grounds that their failure to timely answer or otherwise respond to the Complaint was inadvertent and because they have meritorious grounds for their defenses.  Specifically, Defendants state that the individuals who accepted service of the Summonses and Complaints for both Miniscalco and Liberty Mutual forwarded those documents to Jack Kibblehouse, one of the chairmen of the board of Haines and Kibblehouse, which is one of the owners of Miniscalco.  (Miniscalco Certification ¶ 12; McKenna Certification ¶ 4.)  Mr. Kibblehouse was on vacation at the time and did not forward the Summonses and Complaints back to Miniscalco.  (Miniscalco Certification ¶ 13; Kibblehouse Certification ¶¶ 8-9.)  Defendants further maintain that American Shoring will not

be prejudiced if the defaults are set aside, that they have meritorious defenses to the claims asserted in the Complaint, and that their failure to timely answer or otherwise respond to the Complaint was not culpable.

      A.      <u>Prejudice to American Shoring</u>

American Shoring has the burden of establishing that it would be prejudiced by our setting aside the defaults by "demonstrating that [its] claim 'would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors.'"  <u>United States ex rel. Constr. Hardware, Inc. v. Patterson</u>, Civ. A. No. 12-3285, 2013 WL 5356851, at *2 (E. D. Pa. Sept. 24, 2013) (quoting <u>Dizzley v. Friends Rehab. Program, Inc.</u>, 202 F.R.D. 146, 148 (E.D. Pa. 2001)). "Delays in Plaintiff's potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the Court should consider in deciding whether to set aside an entry of default."  <u>Id.</u> (citing <u>GE Med. Sys. Info. Techs., Inc. v. Ansar, Inc.</u>, Civ. A. No. 04-2775, 2004 WL 2988513, at *2 (E.D. Pa. Dec. 23, 2004)).  American Shoring argues that it would be prejudiced if we set aside the defaults because Defendants would drag out the lawsuit, further delaying payment of the past due invoices.  However, we may not consider this sort of delay in deciding whether to set aside an entry of default.  <u>Id.</u> (citing <u>GE Med. Sys. Info. Techs.</u>, 2004 WL 2988513, at *2).  Consequently, we conclude that American Shoring has not established that it would be prejudiced by our setting aside the defaults and, accordingly, that this factor weighs in favor of setting aside the defaults entered against Miniscalco and Liberty Mutual.

B.    Meritorious Defenses

As we noted, supra, the most important factor in our determination of whether to set aside the defaults is whether Defendants have alleged facts that could constitute meritorious defenses to American Shoring's causes of action. $55,518.05 in U.S. Currency, 728 F.2d at 195. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" Id. (quoting Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951); and citing Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982)). It is not enough for Defendants simply to deny the factual allegations in the Complaint. Rather, Defendants must allege facts, which, if established, would enable them to prevail in the action. Id. at 196. Nonetheless, "[t]he defendant is not required to 'prove beyond a shadow of a doubt that it will win at trial.' It is sufficient for the defendant to show that its defense is not 'facially unmeritorious.'" Philadelphia Fed. Credit Union v. Ankrah, Civ. A. No. 13-3040, 2014 WL 644998, at *3 (E.D. Pa. Feb. 19, 2014) (quoting Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).

Defendants have described their defense to American Shoring's claims in their Motion and have also submitted their proposed Answer to the Complaint. Defendants contend that American Shoring billed Miniscalco for more than Miniscalco actually owed for the equipment rental. Specifically, Defendants maintain that they do not owe American Shoring the damages it seeks because American Shoring failed to give Miniscalco credits for returning equipment early (i.e., American Shoring charged Miniscalco for a month's equipment rental even if the equipment was returned after three weeks). (Mot. ¶¶ 6-8, 27.) Defendants also contend that American Shoring improperly filed the instant action in this venue, as the June 30, 2014 Rental Agreement between American Shoring and Miniscalco requires that any suit "instituted to

enforce or defend any rights or obligations pertaining to this agreement" be filed in Orange County, New York.  (Id. ¶¶ 4, 28.)

American Shoring argues that Miniscalco's defenses would not be successful at trial because the evidence will not support Miniscalco's arguments that it was overcharged for the rental equipment and that American Shoring instituted this action in the wrong venue.  However, at this point in the litigation we do not need to determine whether Miniscalco will prevail at the trial of this action, only whether its defense is "'facially unmeritorious."  See Philadelphia Fed. Credit Union, 2014 WL 644998, at *3 (quoting Emcasco, 834 F.2d at 74.)    We find that the defenses asserted by Defendants are sufficient "to establish a meritorious defense for purposes of setting aside a default."  Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distribs., Civ. A. No. 07-4037, 2007 WL 4323001, at *3 (E.D. Pa. Dec. 11, 2007) (determining that the defenses of improper venue and payment of allegedly unpaid invoices were sufficient for the purpose of setting aside a default judgment).  Defendants are not required to prove their case at this stage of the litigation.  If they "can later prove either that venue is improper" or that they do not owe the sums demanded by American Shoring, their "'defenses could well defeat Plaintiff's claims.'"  Id. (quoting Moark v. Yardley Farms, LLC, Civ. A. No. 06-1362, 2006 WL 1582325, at *1 (E.D. Pa. June 2, 2006)).  We conclude that Defendants have set forth facially meritorious defenses and, accordingly, that this factor weighs in favor of setting aside the defaults entered against Miniscalco and Liberty Mutual.

### C. Culpable Conduct

"Conduct is culpable when the conduct leading to entry of default was 'willful, intentional, reckless or in bad faith.'"  Constr. Hardware, 2013 WL 5356851, at *3 (quoting Momah v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 308 (E.D. Pa. 1995)).  Culpability requires

"'more than mere negligence.'"  Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (quoting Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984)).  "'Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard.'"  Id. (quoting Hritz, 732 F.2d at 1183).

Defendants maintain that their conduct was not culpable.  They admit to having made mistakes and that it was careless of them to leave the Summonses and Complaints on Mr. Kibblehouse's desk while he was on vacation rather than timely respond to the Complaint.  However, they maintain that they did not willfully ignore the Complaint, but acted inadvertently and attempted to rectify their mistakes immediately after learning of the defaults.  American Shoring argues that Defendants' conduct is inexcusable because "[i]t is hard to believe that sophisticated companies like Liberty Mutual and Miniscalco . . . simply missed the filing deadline," particularly as "Defendants hired legal counsel and had their counsel contact the Court the day after the default was entered."  (Pl.'s Opp. at 6.)  American Shoring suggests that Defendants did not inadvertently fail to respond to the Complaint because Mr. Kibblehouse was on vacation, but intentionally disregarded the Complaint "in the hopes that American Shoring would not pursue it."  (Id.)  There is, however, no evidence on the record before us that Defendants intentionally waited to respond to the Complaint in the hopes that American Shoring would drop this proceeding.  Rather, the only evidence of record supports Defendants' claims that they acted inadvertently, though negligently, in failing to timely respond to the Complaint.  We conclude that Defendants have established that their conduct was not culpable and, accordingly, that this factor also weighs in favor of setting aside the defaults.

## V. CONCLUSION

We have weighed the three factors that we must consider in ruling on a motion to set aside default judgments pursuant to Federal Rule of Civil Procedure 55(c): "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct."  <u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 195.  All three of these factors weigh in favor of setting aside the defaults entered against Defendants in this case.  The Motion to Open Default is, therefore, granted.

                                         BY THE COURT:

                                         ____S/ JOHN R. PADOVA_____
                                         John R. Padova, J.